# Fetterman *versus* Robbins.

1. The charter of a turnpike road company provided a penalty of \$5
for taking toll on any portion of the road found by an inquisition to be
out of repair, the same " to be recovered before any justice of the peace
as debts of equal amount are recoverable."   The transcript of a justice
showed that a "summons in debt" had issued to recover from a toll-gate
keeper said penalty.   The summons itself commanded the defendant
"to answer J. R. in a plea of *penal debt*."   *Held*, that the discrepancy
between the transcript and the summons was immaterial.   The provision
of the charter (above quoted), clearly indicates that the legislature
intended to avoid technicalities by providing a plain civil remedy for the
collection of the penalty as often as it might be incurred.

April 11th 1882.   Before SHARSWOOD, C. J., MERCUR,
GORDON, PAXSON, TRUNKEY, STERRETT, and GREEN, JJ.

ERROR to the Court of Common Pleas of *Luzerne county :*
Of July Term 1880, No. 68.

Certiorari to the judgment of a justice of the peace, in an
action of debt by John F. Robbins against Jeremiah Fetterman,
a toll-keeper on the Susquehanna and Lehigh Turnpike road,
to recover \$5, the penalty imposed by the charter of the turnpike
company for collecting toll on a certain portion of the road declared by an inquisition, &c., to be out of repair.

[Fetterman *v.* Robbins.]

By Act of March 19th 1804 (4 Sm. L. 166), "The president, managers, and company of the Susquehanna and Lehigh Turnpike Road" were incorporated with the powers of a turnpike road company. Section 14 of the charter provided :

"That if the said company shall neglect to keep the said road in good and perfect order and repair for the space of fifteen days, and information thereof shall be given to any justice of the peace of the proper county, such justice shall issue a precept, to be directed to any constable, commanding him to summon three judicious freeholders to meet at a certain time in the said precept to be mentioned at the place in the said road which is complained of, of which meeting notice shall be given to the keeper of the gate or turnpike nearest thereto, and the said justice shall, at such time and place, by the oaths or affirmations of the said freeholders, inquire whether the said road, or any part thereof, is in such good and perfect order and repairs as aforesaid, and shall cause an inquisition to be made under the hands and seals of himself and a majority of the said freeholders, and if the said road shall be found out of order and repair, according to the true intent and meaning of this Act, he shall so certify and send one copy of the said inquisition to each of the keepers of the turnpikes or gates, between which such defective place shall be, and from thenceforth the tolls hereby granted to be collected at such turnpikes or gates, for the intermediate distance between them, shall cease to be demanded, paid or collected, until the said defective part or parts of the said road shall be put into good and perfect order and repair as aforesaid, and if any of the keepers of the gates aforesaid shall take or attempt to collect tolls for the immediate distance between the gates aforesaid from any traveller during the time the road shall continue out of repair, such keeper shall forfeit and pay to the person who shall prosecute for the same, the sum of five dollars, to be recovered before any justice of the peace, as debts of equal amount are recoverable."

Upon information before a justice of the peace, a jury of three freeholders was appointed to make an inquisition whether said turnpike road was in such good order as the charter prescribes, and they filed their report setting forth that certain portions thereof were not, and had not been for fifteen days previous to June 12th 1879 in such good order, &c., and notice thereof was served on the defendant.

On the trial before the justice the defendant admitted that he had collected toll, after the service of such notice, for travel on such condemned portions of the road. Whereupon the said justice, after hearing the evidence, gave judgment for the plaintiff, for the sum of $5, and costs.

The transcript of the justice set forth, "summons in debt," issued, &c., and returned served. The summons itself com-

manded the constable to summon the defendant "to answer John F. Robbins in a plea of *penal* debt," &c. The transcript further set forth the inquisition in full, and the said admission of the defendant.

In the Common Pleas, the defendant filed the following exceptions to the record of the justice:

1. The summons is in penal debt; whereas the record returned shows a proceeding in debt.

2. The record shows that the justice entered judgment against the defendant on the allegations of the plaintiff.

3. The record is not complete.

4. The proceedings are irregular and void.

5. The justice had no jurisdiction.

The court overruled said exceptions and affirmed the proceedings, whereupon the defendant took this writ of error, assigning for error the overruling of the said exceptions.

*E. S. Osborne* (with him *G. M. Harding*), for the plaintiff in error.

*Gustav Hahn* (with him *A. R. Brundage*), for the defendant in error.

Mr. Justice STERRETT delivered the opinion of the court, October 2d 1882.

The case, as presented in the transcript of the justice, is clearly within the jurisdiction conferred by the Act of March 19th 1804, and there appears to be nothing in the record proper, or in the testimony before the court below, that would have justified a reversal of his judgment.

The remedy provided by the 14th section of the Act, for neglect to keep the road "in good and perfect order and repair," appears to have been strictly pursued. An inquisition, condemning certain portions of the road, was taken, returned and duly served on the plaintiff in error, one of the company's gate-keepers. The legal effect of that preliminary proceeding was to suspend the right of the company to demand or receive tolls on the defective portions of its road, until, in the language of the Act, they were put in "good and perfect order and repair." In addition thereto, that clause of the section on which the present action is founded declares, if any gate-keeper shall take or attempt to exact tolls for such portions of the road as have been condemned, during the time the same shall continue out of repair, such keeper shall forfeit and pay to the person who shall prosecute for the same, the sum of five dollars, to be recovered before any justice of the peace, as debts of equal

[McDermott *v.* Miners' Savings Bank.]

amount are, or may be by law recoverable." The language thus employed clearly indicates that the legislature intended to avoid technicalities by providing a plain civil remedy for the collection of the penalty, as often as it might be incurred. It is to be recovered as a debt of the same amount, in an action before any justice of the peace.

The slight discrepancy between the transcript, which shows simply an action of debt, and the summons, in which it is styled "penal debt," is wholly immaterial. Taken as a whole, the record exhibits a good cause of action. The inquisition given in evidence and fully set out in the transcript, together with proof of the service thereof on the defendant below, and his admission before the justice that he thereafter collected toll, all of which are shown by the record, made a clear prima facie case against him, which could not be successfully rebutted without affirmative proof that the condemned portion of the road had been put in good order and repair before he demanded toll. This was not done, and the judgment of the justice was, therefore, in accordance with the evidence before him.

Judgment affirmed.